UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| GENCOR INDUSTRIES, INC., et al., | ) | Case No. 6:00-bk-03597-KSJ |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| CALYON CORPORATE AND INVESTMENT BANK, | ) ) | |
| | ) | Adversary No. 6:07-ap-3 |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| GENCOR INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Both the plaintiff, Calyon New York Branch, successor in interest by merger with Credit Lyonnais New York Branch, as Agent for certain Lenders (the "Agent"), and the debtor, Gencor Industries, Inc. ("Gencor"), have filed cross motions for summary judgment in this adversary proceeding. The sole issue is whether Section 10.5 of an Amended Credit Agreement requires Gencor to reimburse the Agent for litigation costs incurred in a lawsuit alleging accounting malpractice brought by Gencor against its accountants, Deloitte & Touche, LLP ("Deloitte"). For the reasons explained below, the Court grants the Agent's Motion for Summary Judgment (Doc. No. 17) and denies the Motion for Summary Judgment (Doc. No. 8) filed by Gencor.

On December 10, 1996, Gencor, as borrower, and the Agent, as the representative for a consortium of lenders, entered into a Senior Secured Credit Agreement (the "Original Credit Agreement"). The Original Credit Agreement was amended, on October 15, 1997, when Gencor

and the Agent signed a Second Amendment to Senior Secured Credit Agreement (the "Second Amendment"), pursuant to which Gencor obtained substantial financing to acquire both a United Kingdom subsidiary, Gencor ACP Holdings, Ltd. ("Gencor ACP"), and a Brazilian company, Gumaco Industrio e Comerico Ltda. ("Gumaco"). From 1993 until 1999, Deloitte had provided Gencor with due diligence, independent audits, and financial reporting services. The Agent relied upon Deloitte's audits of Gencor when it entered into the various loan agreements.

On April 5, 2000, certain creditors initiated an involuntary Chapter 11 bankruptcy proceeding against Gencor. Gencor later consented to the Chapter 11 filing, and, on July 11, 2001, Gencor filed its Second Amended Plan of Reorganization, as modified (Doc. No. 584 in the Main Case), wherein Gencor expressly preserved its rights to pursue certain causes of action, including claims against Deloitte in excess of $50,000,000 "[f]or professional malpractice in conjunction with their engagement as auditors for [Gencor], as auditors of record, and as auditors in conjunction with acquisition due diligence for [Gencor]."

On September 23, 2001, consistent with its plan, Gencor filed suit against Deloitte in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, in the action styled <u>Gencor Industries, Inc. v. Deloitte & Touche LLP</u>, Case Number CIO-01-8080 (the "Deloitte Litigation"). In the Deloitte Litigation, Gencor asserted claims against Deloitte for accounting malpractice pertaining to Gencor's acquisition of both Gencor ACP and Gumaco, the two acquisitions funded by the Agent's lenders.

Subsequently, Gencor's Fourth Amended Plan of Reorganization, as modified (the "Plan") was confirmed on December 18, 2001. In accordance with the provisions of the Plan, Gencor, as borrower, and the Agent entered into an Amended and Restated Senior Secured Credit Agreement (the "Amended Credit Agreement"), dated December 31, 2001. The Amended Credit Agreement was a continuation of the Original Credit Agreement.

When the Amended Credit Agreement was signed, Gencor already was engaged in the Deloitte Litigation as well as other litigation, including a class action lawsuit. The Agent was aware of the pending Deloitte Litigation, which was directly related to Gencor's dissatisfaction with its purchase of Gumaco and Gencor ACP funded by the Agent's banks and based on Deloitte's allegedly inaccurate accounting opinions.

Consequently, the Agent was concerned that it might be drawn into the Deloitte Litigation or other litigation and be exposed to attorneys' fees and costs, resulting from its role as the lender under the Amended Credit Agreement. Section 10.5 of the Amended Credit Agreement was negotiated by the parties to address future costs the Agent may encounter in this pending or threatened litigation, and provides in part as follows:

> 10.5  Payment of Expenses and Taxes.  The Borrower [Gencor] agrees. . . (d) to indemnify, and hold each Lender, the Issuing Bank and the Agent, and their respective affiliates, officers, directors, employees, agents and advisors (each, an "Indemnified Party") harmless **from and against any and all other liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever (including legal fees and other charges) with respect to the execution, delivery, performance and consummation of this Agreement, the other Loan Documents, the Disputed Letter of Credit and any such other documents, including, without limitation, any of the foregoing relating to, or arising out of (i) the preparation for a defense of, or participation in, any investigation, litigation, proceeding or other action related to or arising out of the Loan Documents or any other such documents (whether or not such Indemnified Party is a party to such proceeding or other action and whether any such investigation, litigation or proceeding or other action is brought by the Borrower, its stockholders or creditors or by any other Person)** or (ii) the violation of, noncompliance with or liability under, any Environmental Law applicable to the Borrower, any of its Subsidiaries or any of the Mortgaged Properties (all the foregoing in this clause (d), collectively, the "indemnified liabilities"), provided, that the Borrower shall have no obligation hereunder to an Indemnified Party with respect to indemnified liabilities arising from the gross negligence or willful misconduct of such Indemnified Party (as determined in a final non-appealable judgment by a court of competent jurisdiction). **The agreements in this subsection shall survive repayment of the Loans and all other amounts payable hereunder.** (Emphasis added).

The Agent contends it insisted upon the indemnification provision in Section 10.5 of the Amended Credit Agreement to insure that it would be entitled to recover from Gencor any fees and costs it might incur in litigation involving Gencor. Gencor denies that this point was negotiated. In any event, by August 1, 2003, and during the pendency of the Deloitte Litigation, Gencor paid the balance due on the Amended Credit Agreement.

Only after Gencor had paid the balance due under the Amended Credit Agreement did the Agent receive numerous discovery requests from Deloitte in the Deloitte Litigation. The Agent received subpoenas, requests for production of the Agent's records, and notices of depositions of the Agent's employees (collectively, the "Discovery Requests"). The Discovery Requests sought information specifically relating to Gencor's performance and consummation of the Amended Credit Agreement, including a request for the Agent to produce all documents relating to Gencor, including, without limitation, "Gencor's failure to pay amounts due in a timely manner or at all."

In order to respond to the Discovery Requests, the Agent hired lawyers to review its files, to advise it concerning privilege issues, to prepare a voluminous privilege log, to advise the Agent's employees concerning their depositions, and to attend the depositions of the Agent's employees. The scope of Deloitte's requests was broad, but Deloitte's inquiry certainly related to Gencor's performance under the Amended Credit Agreement or the earlier loan documents.

The legal effort of the Agent's attorneys was substantial. The Agent incurred costs and fees to its attorneys for services related to responding to the Discovery Requests in the amount of $103,535.99, which does not include any amounts incurred in prosecuting this adversary proceeding.

The Agent has made several demands upon Gencor for payment of the amounts incurred by the Agent in responding to the Discovery Requests. Gencor never responded to the demands, and it has not paid any portion of the Agent's costs incurred in responding to the Discovery Requests. The Agent then filed this adversary proceeding seeking payment from Gencor. Both parties have filed cross motions for summary judgment (Doc. Nos. 8 and 17).

Pursuant to Federal Rule of Civil Procedure 56, which is applicable under the Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party has the burden of establishing the right to summary judgment. Fitzpatrick v. Schlitz (In re Schlitz), 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986). In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)). Therefore, a material factual dispute precludes summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

No factual dispute exists. Rather, the Agent contends that the language of Section 10.5 of the Amended Credit Agreement requires Gencor to reimburse the Agent for the cost of responding to the Discovery Requests. Gencor denies that the language of Section 10.5 imposes any reimbursement obligation on the company. Resolution of the dispute requires primarily a close reading of the Amended Credit Agreement to determine if any indemnification liability arose.

Often, the best way to interpret complex contractual language is to parse the wording down to its essential terms, hopefully without distorting the meaning. In this case, Section 10.5 of the Amended Credit Agreement requires "Gencor…to indemnify…the Agent…[for all] costs,

expenses or disbursements…with respect to the…performance and consummation of this Agreement…including…participation in…litigation…related to…the Loan Documents." This provision recognizes that the Agent need not be a party to the litigation to seek reimbursement. Moreover, Gencor's indemnification obligation was intended to "survive repayment of the Loans."

Here, Gencor and Deloitte were engaged in hotly contested litigation in which Gencor asserted Deloitte committed accounting malpractice in performing due diligence in connection with Gencor's acquisition of Gencor ACP and Gumaco. The Agent's banks financed the acquisition. The Discovery Requests specifically asked for information relating to Gencor's performance and consummation of the Amended Credit Agreement as well as Gencor's performance and consummation under the earlier Loan Documents. It seems almost disingenuous for Gencor to claim that the Discovery Requests were not directly tied to Gencor's performance under the agreements with the Agent's banks. Indeed, this seems the primary focus of the Discovery Requests.

Rather, Gencor contends its indemnification obligation to the Agent arises only when the underlying litigation directly challenges Gencor's "execution, delivery, performance and consummation" of the loan documents. Here, Gencor was challenging its own advisors' competency in the Deloitte Litigation. No claims were asserted directly against Gencor or the Agent in connection with their actions under the loan documents. Therefore, Gencor contends it has no reimbursement responsibility to the Agent.

Gencor reads Section 10.5 of the Amended Credit Agreement too narrowly. The provision does not require Gencor or the Agent to be the target of the relief sought. Indeed, the provision specifically contemplates that the Agent need not be a party to seek indemnification. Moreover, Section 10.5 includes an expansive phrase "with respect to" that makes it clear, at least to this Court, that Gencor's reimbursement liability to the Agent arises when the later

litigation involves any aspect concerning—or "with respect to"—Gencor's performance under the loan documents. The Discovery Requests asked for the Agent to expend substantial effort and costs to respond to questions "with respect to" Gencor's performance under the loan documents and, under Section 10.5, Gencor is obligated to reimburse the Agent for these costs.

The Agent incurred $103,535.99 in responding to the Discovery Requests. These costs are exactly the type of cost or expense Gencor agreed to reimburse in Section 10.5 of the Amended Credit Agreement. The Agent knew of the pending litigation, did not want to get drawn into the lawsuit relating to its actions under the various loan agreements, but, if it was, certainly wanted to get reimbursed for its costs. The fact that the litigation expenses occurred after Gencor had paid the underlying loan is irrelevant because the express language of Section 10.5 contemplates that Gencor's indemnification obligation would survive repayment of the loan.

As such, the Court finds that Gencor does have an obligation to reimburse the Agent the amount of $103,535.99, pursuant to Section 10.5 of the Amended Credit Agreement. Gencor's arguments that it has no such liability are rejected as inconsistent with the plain language of the applicable section when considered in conjunction with the undisputed facts. The Court will grant the plaintiff's motion for summary judgment (Doc. No. 17) and deny Gencor's cross motion for summary judgment. (Doc. No. 8). A separate order consistent with this Memorandum Opinion shall be entered.

The Court will withhold entry of a Final Judgment until the additional costs and expenses incurred by the plaintiff in bringing this adversary proceeding are awarded. On or before June 30, 2007, the Agent is directed to file a supplemental affidavit requesting any additional fees or costs incurred in the prosecution of this adversary proceeding. Gencor shall have 21 days following the filing of the Agent's supplemental affidavit to file any objection to the requested

amounts. If an objection is timely filed, a hearing will be set. If no objection is timely filed, the plaintiff is directed to submit a proposed Final Judgment to the Court for consideration.

DONE AND ORDERED in Orlando, Florida, on May 18, 2007.

_/s/ Karen S. Jennemann_

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Counsel for Plaintiff: Jill E. Kelso, Akerman Senterfitt, P.O. Box 231, Orlando, FL 32802

Counsel for Defendant: Alan J. Kornfield and Gillian N. Brown, 10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067